## GEORGE WHITAKER *versus* CHARLES P. SUMNER.

The maker of a promissory note delivered a quantity of merchandise, together with a receipted bill of parcels, in the usual form, to the holder, by whom the merchandise was to be retained till the note should be paid. It was *held*, that such bill of sale was not a mortgage, as it contained no condition or defeasance, and none could be engrafted on it by parol evidence; but that the transaction might perhaps be deemed a pledge, putting it on the same footing as if no bill of sale had been executed.

If such pledgor while the merchandise is so in the possession of the pledgee, assign it, and the assignee give notice thereof to the pledgee, the property passes to the assignee, subject to the lien.

The pledgee, in such case, after notice of the assignment, indorsed the note to a third person without transferring also the merchandise, (it not appearing that the indorsee knew of the pledge,) and at the same time promised to show him how he could secure payment of the note by an attachment, and did in fact point out the merchandise to an officer, in order that it might be attached by the indorsee and other creditors of the pledgor ; and the officer thereupon took it into his possession. It was *held*, that the officer could not be deemed the agent of the pledgee to keep possession for him, no notice having been given to the officer, that the pledgee had any lien, and no agreement being made by the officer to hold for him ; that as the pledgee had put it beyond his own power, or that of the indorsee, to restore the merchandise, upon payment of the note, he had waived his lien, if the mere indorsing over the note without a transfer of the pledge was not a waiver ; and that the assignee might maintain trover against the officer, upon his refusal to deliver up the merchandise. [See Revised Stat. *c.* 90, § 78.]

TROVER, against the sheriff of Suffolk, for a quantity of merchandise. At the trial, which was before *Shaw* C. J., Richard Lang testified, that the merchandise formerly belonged to him , that on Feb. 2, 1837, he borrowed of Henry Dawes, a broker, the sum of $925, for which he gave his promissory note for the sum of $1000, payable to his own order in sixty days, and indorsed by him in blank ; that to secure the payment of this note, the witness pledged to Dawes the merchandise described in the declaration, and delivered it into his possession ; that at the same time, the witness gave Dawes a receipted bill of parcels, which was either headed, " Henry Dawes bought of Richard Lang," or the name of the buyer was left in blank ; and that it was agreed between them, that on the payment of the note, the property should be returned to the witness, and that it should be security for the note.

The bill of parcels, when produced at the trial, appeared

to have been altered by striking out the name of Dawes o some other person, and inserting that of Lucius A. Horr It further appeared, that soon after the goods were put into the possession of Dawes, he delivered them, together with the promissory note, to Horr.

On March 29, 1837, Lang failed, and executed an assignment setting forth that he was largely indebted to the plaintiff, and that the plaintiff held certain property, *choses in action*, book debts and claims conveyed to him by Lang, to secure the payment of such debt; that whereas the security so held by the plaintiff was inadequate to the purpose, and whereas Lang had heretofore. pledged and conveyed sundry goods and merchandise, including the merchandise in question, to various individuals as security for loans, in consideration thereof he assigned to the plaintiff all his right, title and interest in and to the property so pledged, to have and to hold as collateral security for whatever might be or remain due to him, empowering him to sue for, settle and sell all such property, and the rights of the assignor therein, to contest and adjust the claims of the persons holding the same, to apply the proceeds thereof to the payment of whatever might be due from the assignor to him, and to pay over the balance, if any, to the assignor.

On the morning of April 7, 1837, the attorney, under whose advice the arrangements for the security of the plaintiff were made, being authorized by the plaintiff so to do, had an interview with Dawes and requested him to restore the goods and to state for whom he had acted. Dawes informed him, that he acted for Horr. On the afternoon of that day the same attorney had an interview with Horr, and it was his strong impression that he then stated to him, that the merchandise in question had been assigned to the plaintiff; but he was not entirely positive that he did so.

It further appeared, that on April 8, 1837, an attorney employed by Horr called on the attorney of the plaintiff and requested to see Lang's assignment; and that the plaintiff's attorney, being particularly engaged at the moment, did no exhibit it to him, but informed him that it was a special assignment to the plaintiff for his own benefit, and not a general

Whitaker
*v.*
Sumner.

assignment for the benefit of creditors. On the morning o.̉ April 10th, the attorney of Horr called again on the plaintiff's attorney, and it was agreed, that the whole interest reserved should be indorsed on the note, and that the residue of the note should be paid out of the goods. In the afternoon of the same day, Horr applied to W. & E. Frothingham to purchase the note, and, by a promise that he would show them how they could secure the note by attachment, and that they should lose nothing by the transaction, induced them to receive Lang's note and give their own note therefor. On the same afternoon, writs were made out by the attorney of Horr, in favor of W. & E. Frothingham, founded on the note of Lang, and also in favor of Frothingham & Blanchard, and Lane, Lamson & Co., on other demands against Lang, by virtue of which a deputy of the defendant attached the merchandise in question, Horr going with the officer to his own house, where the merchandise then was, and pointing it out to him ; and the officer thereupon took it into his own possession, where it has since remained. On the day after the attachments were made, the plaintiff demanded the property of the attaching officer, but he refused to give it up.

By the consent of both parties, the jury were instructed to return a verdict for the plaintiff, assessing as damages the value of the property at the time of the conversion, with interest from that time, and the jury returned a verdict accordingly.

If the Court should be of opinion, that the action might be maintained upon these facts, judgment was to be rendered on the verdict ; otherwise, the plaintiff was to become nonsuit

*Brigham*, for the defendant. The " bill of parcels " vested an absolute title to the merchandise in question in Horr, so that, at the time of the assignment by Lang to the plaintiff, Lang had no interest in the merchandise, which he could convey, and consequently the plaintiff cannot maintain this action. *Austen* v. *Craven*, 4 Taunt. 644 ; *Wilbraham* v. *Snow*, 2 Saund. 47 ; *Vincent* v. *Cornell*, 13 Pick. 294 ; 1 Chitty on Pl. 137. But if the bill of parcels, with the contemporary parol agreement, did not constitute an absolute

*June 23d*

<div style="margin-left:right">

Whitaker
v.
Sumner.
</div>

sale, it was a mortgage, and not a pledge, and therefore passed the title to the merchandise, to the mortgagee. Story on Bailm. § 287 ; *Homes* v. *Crane*, 2 Pick. 607. If so, Lang retained only a mere right to redeem, and the plaintiff acquired no such interest by Lang's assignment to him, as would sustain this action. If the bill of parcels was a mortgage, it could be discharged only by payment of the debt. *Pomroy* v. *Rice*, 16 Pick. 22. But if it was a pledge, there was no waiver of the lien by Horr, the pledgee. A pledgee has but a *special* property ; a mortgagee has the general property. *Tuxworth* v. *Moore*, 9 Pick. 347 ; *Swett* v. *Brown*, 5 Pick. 178 ; *Townsend* v. *Newell*, 14 Pick. 332. It may be said, that if the bill of sale given to Horr was an absolute sale or a mortgage, Lang had no interest therein, that could be attached ; but the defendant could, nevertheless, justify the taking, as the agent or servant of Horr. *Townsend* v. *Newell*, 14 Pick. 336. And if the officer was Horr's servant, Horr never gave up the property, but remained in possession by his servant, the attachment being void.

Two views may be taken of the assignment by Lang to the plaintiff. It was either a conveyance of the property, or a conveyance of a right to redeem. We contend that it was the latter ; but suppose it conveyed the property subject to the lien, then it was a mortgage, and should have been recorded, or possession should have been taken. Revised Stat. *c.* 74, § 5.

The assignment by Lang to the plaintiff was in violation of *St.* 1836, *c.* 238, § 11, the object of which is to prevent preferences in assignments by insolvent debtors.

The property in question was demanded on the behalf of the plaintiff, but no tender of the amount of the debt secured thereby, was made to Dawes, Horr, or the officer.

*C. P. Curtis* and *B. R. Curtis*, for the plaintiff. Supposing that the assignment by Lang to the plaintiff, was a mortgage, still it was valid without recording. Revised Stat. *c.* 74, § 5. The mischief intended to be remedied was, that mortgagers retained possession of the property mortgaged, and so obtained a false credit. But here no such mischief

could arise. Lang had not the possession, and could not obtain it.

Enough was done to make such assignment valid. The situation of the property excused the want of actual delivery. Besides, notice to Horr of the assignment, and to the attorney of the attaching creditors, dispensed with the necessity of a delivery, or of recording the assignment. *Haven* v. *Snow*, 14 Pick. 28 ; *Tunstall* v. *Trappes*, 3 Simons, 301 ; *Priest* v. *Rice*, 1 Pick. 164 ; *Lanfear* v. *Sumner*, 17 Mass. R. 110 ; *Gardner* v. *Howland*, 2 Pick. 602 ; *Bullock* v. *Williams*, 16 Pick. 34.

But we say that the assignment by Lang to the plaintiff was not a mortgage, but an absolute conveyance of the whole *legal* title, though in trust. The assignor could obtain the legal title again only by a tender of the whole debt and by the aid of a court of equity. But it is said, that this assignment was void even as an assignment in trust, by the provisions of *St.* 1836, *c.* 238, § 11. But this is not an assignment to trustees for the use of a creditor, but a direct assignment to the creditor himself. The legislature did not intend, by that statute, to prevent preferences by debtors, or conveyances by way of collateral security, but merely to provide that where a general assignment is made for the benefit of creditors, it shall be made in the manner prescribed by such statute.

The merchandise in question was merely pledged to Horr. It is incumbent on the defendant to show that it was more than a pledge, and that the legal title passed. *Jones* v. *Baldwin*, 12 Pick. 316 ; *M'Lean* v. *Walker*, 10 Johns. R. 471 ; The bill of parcels in itself would perhaps show an intent to pass such title ; but the defendant admits that it does not contain the whole contract, and very properly introduces parol testimony to explain it ; for a bill of parcels is not considered as showing the whole contract. *Wallace* v. *Rogers*, 2 New Hampsh. R. 506. This parol testimony proves that it was a pledge.

If it was a pledge, Lang had the general property when he assigned to the plaintiff ; Story on Bailm. § 287 ; *Homes* v. *Crane*, 2 Pick. 60⁷ ; and that would enable Lang or his as-

signee to maintain trover in their own names respectively *Smith* v. *James*, 7 Cowen, 328 ; *Fettyplace* v. *Dutch*, 13 Pick 388 ; Story on Bailments, § 352 ; *Holly* v. *Huggeford*, 8 Pick. 73.

Horr, by his own acts and in his own wrong, placed the property in such a situation, that a tender was not necessary, as he had incapacitated himself to return the property pledged. *Cortelyou* v. *Lansing*, 2 Caines's Cas. 200, 213. To whom should the tender be made ? Not to Horr ; for the officer had the possession. Nor to the officer ; for he did not hold the property in pledge, but attached the title of the pledgor. A tender to him would be absurd.

The *lien* of Horr was destroyed by his own acts. He sold the note and procured the attachments to be made by the officer. This act was inconsistent with the preservation of his lien. *Homes* v. *Crane*, 2 Pick. 607.

*June 30th.*    SHAW C. J. delivered the opinion of the Court. The question in this case is, whether the plaintiff has shown such a property in these goods, and such a right of possession, as will enable him to maintain trover against the sheriff.

A question arose incidentally, not perhaps very material to the decision of the present case, as to the nature of the title which passed by the bill of sale from Lang to Dawes, or through him to Horr. It was an absolute bill of sale, in the ordinary form of a bill of parcels, of goods to the amount of $2000·48, and receipt of payment is acknowledged. It is in proof, that this was not intended as a sale, but as collateral security for the payment of a promissory note for $1000, payable in 60 days. Clearly it was not a mortgage ; it contained no condition, no defeasance, nor can one be engrafted upon it by parol proof. As a transfer it was fraudulent and void as against creditors, because no consideration was paid, and if set up as a sale, it must operate to defraud creditors. But as possession was delivered to the lender of the money, and was to be retained till the money was paid, it may perhaps be deemed a pledge, putting it on the same footing as if no bill of sale had been executed. At least the most favorable view which can be taken of the transaction for those who claim title under it, is to consider it as a pledge or pawn, in security of the money advanced

Suppose these goods well pledged to Dawes and through him to Horr, the question is, whether the property passed by the assignment from Lang to the plaintiff.

It seems now well settled, that when personal property is under a pledge or lien, whether created by operation of law, or by the act of the owner, the general property remains in the owner, and that he may transfer it by a proper contract, and upon a good consideration, subject only to the lien. *Tuxworth* v. *Moore*, 9 Pick. 347 ; *Fettyplace* v. *Dutch*, 13 Pick. 388. And in such case, as the actual custody and possession of the goods for the time being, is in the hands of the party having the lien, it follows that a constructive or symbolical delivery is sufficient to pass the property. An order by the vendor upon the keeper, or if the contract of sale or conveyance be in writing, proper and satisfactory notice of the conveyance by the vendee to the holder, constitutes such constructive delivery. Where goods are lying in a warehouse, although subject to a lien for keeping, notice to the warehouse keeper, where all the other requisites of a sale are proved, is equivalent to a delivery. After such notice the keeper ceases to be the agent of the vendor, and becomes the agent of the vendee, and thus the goods are placed under the effective control of the vendee, as they would be by an actual delivery. Here notice was given by the plaintiff to Horr, who had the custody of the goods, with no claim of title but that of a pledge ; the property passed to the plaintiff subject to that lien.

But the most material question is, whether Horr, by the transactions stated, waived his lien, before the plaintiff made his demand ; and the Court are of opinion that he did. After notice of the assignment and transfer to the plaintiff, he indorsed over his note to third persons, without also assigning over the pledge ; it does not appear, that the indorsees of the note knew that the indorser held any pledge in security for the note, but he informed them, that if they would purchase the note, he, Horr, could point out property of Lang, upon which it might be secured by attachment. He, in fact, did point out this property to the attaching officer, not only to be attached to secure that particular note, but also to be attached upon other demands against Lang by strangers. He thereby put it

Whitaker
v.
Sumner.

entirely beyond his power, or that of his indorsee, to restore the property upon payment of the note ; and by this means he effectually waived his lien, if he had not done it by indorsing over the note without transferring the pledge. We would not be understood hereby to hold, that an attachment under all circumstances, though made by the party holding the pledge, or by his consent, would be a waiver of his lien. Where the pledgee has other demands, not secured by the pledge, if he were to attach the same goods, with notice to the officer, that he did not waive his lien, but that he, the officer, was to hold the possession for the pledgee and to maintain his lien, it would not amount to a waiver. *Townsend* v. *Newell*, 14 Pick. 332.

And now by the Revised Statutes, property subject to mortgage or pledge, may be attached in the modes therein pointed out.

In the present case, it was suggested, that the officer might be deemed the agent of Horr to keep possession for him. But we can perceive no facts to warrant this claim ; no notice was given to the officer of the existence of any such lien, and no agreement made by the officer to hold for him. On the contrary, the goods were attached on several demands by the creditors of Lang, and the officer became answerable to no persons but the parties to those suits, according to the responsibility thrown upon him by the law, in consequence of such attachments.

The plaintiff having taken the general property by the assignment, subject to the lien, and the lien being discharged, had the general right of property, which draws after it the right of present possession, so that the demand upon the officer and his refusal to deliver the goods constituted a conversion which is sufficient to maintain this action.